IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Jeremy Laird, | No. CV-17-00482-PHX-JAT (BSB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

On February 14, 2017, Petitioner Kenneth Jeremy Laird filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, and argued that his sentence imposed in the Maricopa County Superior Court violates the Eighth Amendment, as applied in *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012). (Doc. 1.)   On Petitioner's motion, the Court stayed this proceeding pending the completion of state court review.  (Docs. 10, 11.)   After the state court proceedings concluded, the Court lifted the stay on September 12, 2017, and set a briefing schedule. (Docs. 14, 15.)   The petition is fully briefed.  (Docs. 16, 31.)   As set forth below, the Court recommends that the petition be denied.

**I.      Factual and Procedural Background**

In 1994, a jury found Petitioner guilty of one count each of first-degree murder, kidnapping, first-degree burglary, and robbery, three counts of theft, four counts of forgery, and three counts of trafficking in stolen property.  (Exs. A, B.)[1]  Petitioner was a

---

[1] Citations to "Ex." are to the exhibits to Respondents' answer to the petition for writ of habeas corpus.  (Docs. 17-28.)

juvenile at the time of the offenses. (*Id.*) The trial court sentenced Petitioner to death on the first-degree murder conviction (Count I), and to an aggregate term of 129 years' imprisonment on the remaining counts of conviction.[2] (Ex. B; Doc. 1 at 4.) Based on the Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551 (2005), in April 2005, the parties stipulated that Petitioner's death sentence on Count I was unconstitutional. (Ex. II.) The trial court accepted the stipulation. (*Id.*) Thus, Petitioner's death sentence was vacated, and he was resentenced to life imprisonment with the possibility of release after serving twenty-five years' imprisonment on the first-degree murder conviction. (Doc. 1 at 2; Ex. II.) The court ordered that Petitioner's sentence on Count I run consecutively to his other sentences. (Ex. JJ.)

In June 25, 2012, the United States Supreme Court decided *Miller v. Alabama,* and held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. In *Miller,* the Supreme Court did not foreclose the imposition of life without parole on a juvenile homicide defendant, but explained that a judge's exercise of discretion in imposing such a sentence must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 479-80.

On June 19, 2013, Petitioner filed a notice of post-conviction relief in the state court arguing that *Miller* was a significant change in the law that would probably overturn his sentence for "mandatory life without parole." (Ex. OO.) On July 23, 2014, after the parties briefed whether *Miller* applied retroactively and whether Petitioner

---

[2] Petitioner was sentenced to 21 years' imprisonment on the kidnapping conviction, 21 years' imprisonment on the first-degree burglary conviction, five years' imprisonment on each forgery conviction (Counts V, VI, VII, VIII), five years' imprisonment on the robbery conviction, ten years' imprisonment on each theft conviction (Counts IV, XII and XIII), and 14 years' imprisonment on each conviction for trafficking in stolen property (Counts XIV, XV, XVI). (Ex. B.) The trial court ordered that several of the sentences run concurrently. (*Id.*)

presented a cognizable claim for relief, the trial court denied relief.  (Exs. QQ, RR, SS, TT.)  Petitioner sought review in the Arizona Court of Appeals.  (Ex. UU.)

While Petitioner's appeal was pending, on January 25, 2016, the Supreme Court decided *Montgomery v. Louisiana*, ___ U.S. ___ 136 S. Ct. 718, 737 (2016), and held that *Miller* announced a new, substantive rule of law that was retroactive on collateral review.  On October 4, 2016, the Arizona Court of Appeals granted review, but denied relief.[3]  (Ex. XX.)  Petitioner filed a petition for review in the Arizona Supreme Court. (Ex. YY.)  On August 30, 2017, the Arizona Supreme Court denied review.[4]  (Ex. ZZ.)

## II.    Petitioner's Claim

In the petition before this Court, Petitioner argues that his consecutive sentences, which result in an aggregate sentence of 154 years to life imprisonment, are the functional equivalent of a sentence of life without parole and, therefore, violate the Eighth Amendment under *Graham* and *Miller*.  (Doc. 1 at 7.)  Petitioner presented this same claim to the state court on post-conviction review.  (Ex. UU.)  The Arizona Court of Appeals rejected this claim.  (Ex. XX.)

## A.    Federal Habeas Review of Claims Adjudicated on the Merits

Under § 2254(d), a federal court cannot grant habeas corpus relief unless the petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the Supreme Court at the time of the state court

---

[3]  The appellate court noted that Petitioner did not raise the issue of the length of his aggregate sentences until his reply in the trial court and that the trial court did not address that issue.  (Ex. XX at 3 n.3.)  The court could not determine why the trial court had not addressed that issue, but declined to find the issue not properly before it.  (*Id*.)

[4]  On January 25, 2017, Petitioner filed a notice of post-conviction relief in state court arguing that his consecutive sentences are the functional equivalent of a life sentence without the possibility of parole in violation of the Eighth Amendment.  (Ex. AAA.) Petitioner argues that his Rule 32 petition is properly before the state court because *Miller*, *Montgomery*, and *State v. Valencia/Healer*, 386 P.3d 392 (Ariz. 2016), constituted a significant change in the law that would probably overturn his sentences.  (Ex. AAA.) The post-conviction court appointed counsel to represent Petitioner, and several defendants who had asserted similar claims, and consolidated these defendants' cases. (Ex. BBB.)  The post-conviction court stayed the proceeding pending the outcome of a petition for writ of certiorari in *Valencia*.  (Ex. CCC.)  Neither Petitioner nor Respondent argue that this matter should be stayed pending the outcome of the latest state court proceeding.

decision, or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" based on the record before the state court.  28 U.S.C. § 2254(d)(2).  This standard is "difficult to meet."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  It is a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).  When evaluating state court decisions on habeas review, federal courts look through summary or unexplained higher state court opinion to the last reasoned decision on the claim.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision.  *Greene v. Fisher*, 565 U.S. 34, 38 (2011).  A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).  A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'"  *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Federal courts may also grant habeas corpus relief when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process

unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014); *see also Pollard v. Galaza*, 290 F.3d 1030, 1033, 1035 (9th Cir. 2002) (the statutory presumption of correctness applies to findings by both trial courts and appellate courts).  Additionally, state court findings of fact are presumed to be correct.  28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with "clear and convincing evidence." *Id.*  "A state court's factual findings are unreasonable if 'reasonable minds reviewing the record' could not agree with them." *Ayala v. Chappell*, 829 F.3d 1081, 1094 (9th Cir. 2016) (quoting *Brumfield v. Cain*, ___ U.S. ___, 135 S. Ct. 2269, 2277 (2015)).

When a state court decision is deemed to be contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts, a petitioner is not entitled to habeas corpus relief unless the erroneous state court ruling also resulted in actual prejudice as defined in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *See Benn v. Lambert*, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). "Actual prejudice" means that the constitutional error at issue had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 631.

**B.     Petitioner is Not Entitled to Habeas Corpus Relief.**

As set forth above, Petitioner argues that his consecutive sentences, which result in an aggregate sentence of 154 years to life imprisonment, are the functional equivalent of a sentence of life without parole and, therefore, violate the Eighth Amendment under *Graham* and *Miller*.  (Doc. 1 at 7.)  Respondents argue that Petitioner cannot show that the state court's rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law and, therefore, he is not entitled to habeas corpus relief. (Doc. 16.)  As set forth below, the Court agrees with Respondents.

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established" at the time of the state court decision. *Williams*

- 5 -

*v. Taylor*, 529 U.S. 362, 390 (2000). "Clearly established" federal law consists of the holdings, not dicta, of the Supreme Court. *See White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014); *Carey v Musladin*, 549 U.S. 70, 74 (2006). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381. However, although only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled on other grounds by Lockyer v Andrade*, 538 U.S. 63, 71 (2003).

In *Graham*, the Supreme Court held that the Eighth Amendment prohibits the imposition of life without parole on a juvenile defendant who did not commit a homicide crime. *Graham*, 560 U.S. at 74, 82. The Court clarified that "[a] State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id*. at 82. Two years later, in *Miller*, the Supreme Court held that mandatory life without parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Miller*, 567 U.S. at 479. In *Miller,* the Court did not foreclose a sentencing court's ability to impose life without parole on a juvenile homicide defendant, but explained that the sentence must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. To support this conclusion, the Court cited its explanation in *Graham* that a prohibition on life without parole means that a state "must provide 'some meaningful opportunity to obtain release.'" *Id*. at 470 (quoting *Graham*, 560 U.S. at 75).

Petitioner presented his *Graham/Miller* claim to the state court on post-conviction review. (Ex. UU.) The Arizona Court of Appeals granted review, but denied relief. (Ex. XX.) The appellate court first noted that in *Graham* the Supreme Court held that a

sentence of life without the possibility of release for a juvenile who commits an offense other than homicide is unconstitutional. (*Id*.) The appellate court then noted that *Miller* held that the Eighth Amendment prohibits a mandatory sentence of life without the possibility of release for juvenile homicide offenders. (*Id*.) The court observed that neither *Graham* nor *Miller* addressed the issue of consecutive sentences, such as those imposed in Petitioner's case. (*Id*.) The Arizona Court of Appeals further noted that Petitioner was not sentenced to life without the possibility of release for any of his convictions. (*Id*.) The court found that Petitioner's sentences did not violate *Graham,* based on its decision in *State v. Kasic*, 265 P.3d 410, 415 (Ariz. Ct. App. 2011), which held that *Graham* did not prohibit the imposition of cumulative sentences that result in an aggregate term of imprisonment that exceeds a juvenile defendant's life expectancy. (Ex. XX.) The court found that *Miller* did not have any effect on the *Graham* decision that would require a different conclusion. (*Id*.)

Relying on *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013), Petitioner argues that he is entitled to habeas corpus relief based on *Graham* because his aggregate sentence of 154 years to life imprisonment is functionally equivalent to life without parole. (Doc. 1 at 7; Doc. 31 at 5.) In *Moore*, the Ninth Circuit held that the petitioner's sentence of 254 years' imprisonment for non-homicide offenses that he committed as a juvenile violated the Eighth Amendment under *Graham*. *Id*. at 1194. The court concluded that the petitioner's sentence of 254 years' imprisonment was "irreconcilable with *Graham's* mandate that a juvenile *nonhomicide* offender must be provided 'some meaningful opportunity' to reenter society." *Id.* (emphasis added).

As Respondents argue, *Moore* is distinguishable from this case because, unlike Petitioner in this case, the petitioner in *Moore* did not commit a homicide offense. *See Moore*, 725 F.3d at 1186, 192-93 (noting that *Graham* distinguished between homicide and nonhomicide crimes). In *Graham,* the Court stated, that "[t]he instant case concerns only those juvenile offenders sentenced to life without parole *solely* for a nonhomicide offense." *Graham*, 560 U.S. at 63 (emphasis added) (stating that "[j]uvenile offenders

who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide.")   The Court further noted that "[t]here is a line 'between homicide and other serious violent offenses against the individual.'"   *Id.* at 69 (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 438 (2008)).   In his briefing before the state court, Petitioner recognized that *Graham*, by itself, "did not cleanly apply to [Petitioner's] case in light of the murder conviction in Count I."   (Ex. SS; Doc. 27 at 82.)   Considering the distinction in *Graham* between homicide and non-homicide crimes, the Arizona Court of Appeals' conclusion that Petitioner, who was convicted of both homicide and non-homicide crimes, was not entitled to relief was not contrary to, or based on an unreasonable application of, *Graham.  See* 28 U.S.C. § 2254(d); *see also Graham*, 560 U.S. at 63.

Petitioner further argues that he is entitled to habeas corpus relief under *Miller,* in which the Supreme Court held that mandatory life imprisonment without the possibility of parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on cruel and unusual punishment.  *Miller*, 567 U.S. at 479.  Petitioner, however, was not sentenced to life without parole.   (Exs. BB, II.)   Rather, Petitioner received several sentences that totaled 129 years' imprisonment, to be followed by a sentence of life imprisonment with the possibility of release after serving twenty-five years' imprisonment.  (*Id.*)   Thus, Petitioner was not given a mandatory sentence of life imprisonment without the possibility of parole.  As the Arizona Court of Appeals noted on post-conviction review, *Miller* explicitly applies to mandatory sentences of life without parole on a juvenile defendant and does not address the issue of consecutive sentences.  (Ex. XX; Doc. 28 at 53); *see Miller*, 567 U.S. at 479.  In this case, Petitioner was convicted of numerous separate offenses and was sentenced to consecutive sentences that total 154 years to life imprisonment.  (Exs. B, II.)

Several years after *Miller* was decided, in *Demirdjian v. Gipson*, 832 F.3d 1060 (9th Cir. 2016), the Ninth Circuit considered the issue of consecutive sentences under *Miller*.  In that case, petitioner argued that his two consecutive sentences of 25 years to

life imprisonment violated the Eighth Amendment because he was a juvenile at the time he committed the crimes. *Id*. at 1076. The petitioner conceded that he did not receive a life-without-parole sentence, but argued that he was entitled to relief under *Miller* because his sentence was the functional equivalent of mandatory life without imprisonment. *Id*. at 1076-77. The court concluded that because the petitioner would be "eligible for parole when he was 66 years old, his sentence arguably [did] not 'share [any] characteristics with death sentences' . . . , and thus [did] not necessarily trigger *Miller's* requirements." *Id*. at 1077 (quoting *Miller*, 132 S. Ct. at 2466). The court concluded that "[b]ecause fairminded jurists could disagree with [the petitioner] that *Miller's* requirements applied to his sentence," he was not entitled to habeas corpus relief. *Demirdjian,* 832 F.3d at 1077.

The court further explained that *Miller* may apply only to life-without-parole sentences:

> *Miller's* prohibition of mandatory life-without-parole sentences for juvenile offenders rested in part on the premise that "a distinctive set of legal rules" applies to a life-without-parole term for juveniles. 132 S.Ct. at 2466. Because such a term is the "ultimate penalty for juveniles . . . akin to the death penalty," *id*. it "demand[s] individualized sentencing," including consideration of the juvenile's age and the circumstances of the crime, *id*. at 2467. *Miller* noted, however, that "no other sentences" "share [these] characteristics with death sentences." *Id*. at 2466 (quoting *Graham v. Florida*, 560 U.S. 48, 69 (2010)). There is a *reasonable* argument that *Miller* thus *applies only to life-without-parole sentences*.

*Id*. at 1076-77 (emphasis added).

The holding in *Miller* specifically applies to life-without-parole sentences. *Miller*, 567 U.S. at 479. Petitioner, however, was not sentenced to life without parole. (Exs. B, II.) Rather, he was sentenced to separate consecutive sentences that collectively will likely exceed his life expectancy. (*Id*.) Petitioner argues that his aggregate sentence violates the Eighth Amendment under *Miller*. (Doc. 1 at 7.) However, "[t]he rule upon which [Petitioner] relies—that the functional equivalent of life without parole is unconstitutional—is not the rule established in *Miller* and made retroactive in

*Montgomery.*"  *In re Harrell*, 2016 WL 4708184, at \*2 (6th Cir. Sept. 8, 2016) (denying request to file a second or successive habeas petition arguing that an effective term of life imprisonment without parole on a juvenile defendant was unconstitutional under *Miller* ); *see also Starks v. Easterling*, 659 F. App'x. 277, 280-81 (6th Cir. 2016) ("[T]he Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life . . . ."); *Bell v. Nogan*, 2016 WL 4620369, at \*3 (D. N.J. Sept. 6, 2016) (denying petitioner's request for a stay to exhaust a claim that his sentence, which constituted a "de facto sentence of life without parole," violated *Miller* because that claim lacked merit).

Because Petitioner did not receive a sentence of life without parole, *Miller* does not explicitly apply to him.  The Supreme Court has not yet specifically ruled on whether the Eighth Amendment extends to juvenile sentences that are the functional equivalent of a sentence of life without the possibility of parole and "lower courts are divided about the scope of *Miller*."  *Bell*, 2016 WL 4620369, at \*3 (citing *Starks*, 2016 WL 4437588, at \*3); *see Moore*, 742 F.3d at 920 (O'Scannlian, dissenting from denial of rehearing *en banc*) (collecting cases) (considering *Graham* and noting that courts are split about whether consecutive, fixed sentences resulting in a sentence that exceeds a defendant's life expectancy are the functional equivalent of a life sentence).

Because there is no clearly established Supreme Court precedent holding that an aggregate sentence that is functionally equivalent to life imprisonment without the possibility of parole violates the Eighth Amendment, the Arizona Court of Appeals' decision is not contrary to or based on unreasonable application of clearly established Supreme Court precedent.  *See Harrington v Richter*, 562 U.S. 86, 101 (2011) (stating that "[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]."); *see also White,* 134 S. Ct. at 1706 ("'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'") (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).  Thus, the appellate court reasonably concluded that Petitioner was not entitled to habeas corpus relief under *Miller*.  *See Demirdjian,* 832 F.3d at 1076-77; *Bautista v. Ryan*, 2017 WL 8181544, at *4 (D. Ariz. Dec. 7, 2017) (concluding that request to amend the petition to include a claim that petitioner's consecutive sentences violated the Eighth Amendment because they were the functional equivalent of life imprisonment without the possibility of parole would be futile).

**III.    Conclusion**

The Court finds that Petitioner is not entitled to habeas corpus relief.  Therefore, the Court recommends that the petition for writ of habeas corpus be denied.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right .

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6, 72.  The parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

Dated this 26th day of June, 2018.

_____
Bridget S. Bade
United States Magistrate Judge

- 11 -